THE STATE ex rel. HAMILTON v. GUINOTTE, Probate Judge.

### In Banc, June 4, 1900.

1. **Administration: LETTERS: REVOCATION PENDING AN APPEAL.** Revised Statutes 1889, sec. 13, provides that if the validity of a will be contested, or the executor be a minor, or absent from the State, letters of administration shall be granted during the time of such contest, minority or absence, to some other person. *Held,* that an order of the probate court revoking letters of administration issued under such section, made after the determination of a will contest in

the circuit court, but during the pendency of an appeal therefrom, was erroneous, the appeal to the Supreme Court being a part of the "time of such contest." (Robinson and Valliant, JJ., dissenting.)

2. ———: ———: ———: WILL CONTEST: DERIVATIVE JURISDICTION. Where suit is brought in a circuit court to contest the validity of a will, the jurisdiction of the court is not original, but derivative, the matter being transferred to that tribunal from the probate court as if on appeal; and hence on the institution of such suit the probate court lost jurisdiction to revoke letters of administration issued *pendente lite*, and could not regain such jurisdiction until the result of the will contest had been officially certified to it from the appellate tribunal; and an order revoking such letters, made by the probate court in the interim, was *coram non judice* and void.

3. Will Contest: REVIEW OF EVIDENCE BY APPELLATE COURT. Sections 8888 and 8889, Revised Statutes 1889, authorize a will contest in the circuit court, and the trial of an issue as to whether the writing produced be the will of the testator or not, and provide that the jury's verdict or court's finding shall be final, saving the right to grant a new trial and an appeal on matters of law. *Held,* that on appeal from the circuit court, the Supreme Court will review the sufficiency of the evidence, and that hence an order of the probate court, made during the pendency of an appeal involving such issue, which revoked letters of administration issued *pendente lite*, was erroneous. (Robinson and Valliant, JJ., dissenting.)

4. ———: APPEAL: NO BOND: SUPERSEDEAS. It is not necessary that an appeal bond be given on appeal in a will contest from the circuit court to the Supreme Court, in order to vest jurisdiction of the cause in the latter tribunal to the exclusion of the lower courts, since an appeal in such a case carries with it its own supersedeas. (Robinson and Valliant, JJ., dissenting.)

5. ———: REVOKING LETTERS OF ADMINISTRATION: CERTIORARI. Though section 278, Revised Statutes 1889, authorizes an appeal to the circuit court from an order of the probate court revoking letters of administration, *certiorari* to the Supreme Court will also lie to review such order, and the remedy by appeal would not furnish adequate relief.

6. Certiorari: CONSIDERATION AFTER AWARD. After a writ of *certiorari* has been issued, and the record of the inferior court has been certified in response thereto, it is too late for the court to then determine whether the writ was awarded in the proper exercise of its discretion. (Gantt, C. J., and Burgess and Brace, JJ., dissenting.)

State ex rel. v. Guinotte.

PER VALLIANT, J., DISSENTING; ROBINSON, J., CONCURRING THEREIN.

1. Certiorari: WHEN EMPLOYED? Whenever the action of a probate court in revoking the letters of administration is contrary to law, the proper remedy is afforded by the writ of *certiorari.*

2. Will: APPEAL: SUPERSEDEAS. An appeal without bond from the final judgment of the circuit court establishing a will, does not act as a supersedeas.

3. ———: CONTEST: EFFECT. When a suit is instituted in the circuit court to contest a will the effect is to vacate the action of the probate court admitting it to probate, and to transfer the issue of will-or-no-will to the circuit court to be tried anew.

4. ———: ———: EFFECT OF APPEAL. When an appeal without bond is taken from a circuit court judgment establishing a will, the effect under the statute is the same as if an appeal should be taken from an ordinary money judgment whereof plaintiff had already had satisfaction by execution.

## *Certiorari.*

MOTION TO QUASH ORDER OF PROBATE COURT GRANTED.

*Sam'l W. Hilt* and *Chas. C. Madison* for relator.

The duties of an administrator pending suit, commence from the date of the order of appointment and if the decree in the action is appealed from, do not cease until the appeal has been disposed of. The appeal operates as an extension of the suit. Taylor v. Taylor, 6 Probate Division, 29; Dunham v. Dunham, 16 Gray 577; Werner's Am. Law of Administrations (2 Ed.), sec. 181; Estate of James Robinson, 12 Phila. (Pa.) 14. The appeal transfers the cause to the Supreme Court and it is still as much pending as before judgment in the circuit court. After an appeal is taken in a case the cause must be regarded as one pending in the court to which the appeal is taken. Foster v. Rucker, 26 Mo. 494. The question of supersedeas should not and can not be legitimately injected or infused into this case for the reason there is nothing that can be superseded, unless it is the costs and they have been paid by the relator. Cash v. Lust, 142 Mo. 632.

*Flournoy & Flournoy* for respondent.

SHERWOOD, J.—The will of Thomas G. Hall was admitted to probate in the probate court of Jackson county, and letters testamentary without requirement of bond issued to his daughter and executrix, Maggie McCune. These things being done, relator brought suit in the circuit court of Jackson county to contest the will. A change of venue transferred this cause to the Cass Circuit Court. Pending this suit, the probate court appointed an administrator *pendente lite* of Hall's estate, and ordered the executrix to turn over the estate to him, which was done. The will contest in Cass county resulted in establishing the paper writing as the last will of Hall, and thereupon relator paid the costs, and appealed to this court but gave no bond; that appeal is still pending. Upon being advised of the result of the will contest in the Cass Circuit Court, the executrix applied to be reinstated in her former position; her application was granted and relator ordered to turn over the estate to her. To prevent execution of this order *certiorari* is prayed and a motion to quash that order interposed.

Various sections of the statute are relied on by the adverse litigants to this record, both to uphold as well as to overthrow the action of the probate court, which sections will now be quoted.

Section 13, Revised Statutes 1889, provides: "If the validity of a will be contested, or the executor be a minor, or absent from the State, letters of administration shall be granted during the time of such contest, minority or absence to some other person, who shall take charge of the property and administer the same according to law, under the direction of the court, and account for and pay and deliver all the money and property of the estate to the executor or regular administrator when qualified to act."

Sections 8888 and 8889, Ibid, are the following:

"If any person interested in the probate of any will shall appear within five years after the probate or rejection thereof, and, by petition to the circuit court of the county, contest the validity of the will, or pray to have a will proved which has been rejected, an issue shall be made up, whether the writing produced be the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court.

"The verdict of the jury or the finding and judgment of the court shall be final, saving to the court the right of granting a new trial, as in other cases, and to either party an appeal, in matters of law, to the Supreme Court or to the St. Louis and Kansas City Courts of Appeal."

The facts already related and the statutory provisions quoted give rise to these questions:

First, what is meant by the expression, "during the time of such contest?"

Second, what effect did the suit brought in the circuit court to contest the will have upon the jurisdiction of the probate court?

Third, what effect upon the jurisdiction of the probate court did the appeal have which was taken from the circuit court to this court?

1. The initial question above propounded, is as comprehensive, so far as concerns the borders and boundaries of this case, as the two commandments on which hang "all the law and the prophets." It has been determined of words similar to those here litigated that "during the term," as used in the Constitution of California, means "during the time or period for which the officer is elected." [People ex rel. v. Burbank, 12 Cal. loc. cit. 392.] In that case the Constitution of that State provided that "district judges shall not be eligible to any other office during the terms for which they shall have been elected; and further, that their compensation shall not be increased or diminished during that term."

In discussing these provisions the court say: "If A is elected district judge, and enters upon the office, or accepts it for a day, he is disqualified for other office during the whole period of six years; and so, after his election, it would not be competent for the legislature to change the compensation." And they say their only difficulty in construing these provisions, "is the difficulty of making clearer what the Constitution has made palpable."

And it has been determined also, that the legal import of the words "during coverture," as explained by Lord Coke (vol. 1, p. 149), mean "while the marriage lasts." [State v. Fry, 4 Mo. loc. cit. 159.]

In section 13, *supra*, are grouped together three classes of cases authorizing and commanding the appointment of an administrator *pendente lite*, to wit:

1st, "during the time of such contest."

2d, "during the time of such minority."

3d, "during the time of such absence."

Concerning an appointment *durante absentia*, it has been ruled that such administration is at an end the moment the absentee returns. [Schouler's Extrs. & Admrs. (2 Ed.), sec. 133.]

So that, if it be error to revoke the appointment of an administrator *pendente lite* while the executor remains a minor, or while he remains absent from the State, it must be equally error to revoke such an appointment while the contest over the will is still in progress. No reason can be urged why revocation of letters granted during minority or absence should not occur during those periods, that should not apply with equal force to letters granted "during the time of such contest." In the old law, the words were "during such contest." [R. S. Laws of 1825, p. 94, sec. 6.] At the revision of 1835, the words "the time of" were added (R. S. 1835, p. 42, sec. 9), as if to give emphasis to the other words of the section by those which were subsequently added.

The administrator thus appointed "during the time of such contest," is commonly called an administrator *pendente lite*, which means an administrator "during litigation." [Whart. Law Lexicon (7 Ed.), p. 615.]

Now, *"lis"* means "a suit, action, controversy or dispute." [Ib., p. 487.] And "dispute is a conflict or contest." [Standard Dict., p. 530.] "Controversy is a disputed question; a suit at law." [Ibid., p. 409.] And *"lis pendens"* is "a pending suit." [Whart. Law Lexicon (7 Ed.), p. 487.]

So that, as long as the *lis* continues *pendens*, so long does the administrator appointed during litigation, remain a provisional administrator. And the *pendens* of the *lis* is not disturbed nor in any manner affected by the fact of an appeal taken from the circuit court to this court. [Real Estate Sav. Inst. v. Collonious, 63 Mo. loc. cit. 294; Gilman v. Hamilton, 16 Ill. 225; Krug v. Davis, 101 Ind. 75.] The litigation or contest still goes on; and the power of the temporary administrator still remains unaffected by the varying fortunes or vicisitudes of the pending controversy.

2. These remarks bring into view the second interrogatory propounded: What effect did the suit brought in the circuit court to contest the will, have upon the jurisdiction of the probate court?

Upon that point we have had several decisions; the first, Dickey v. Malechi, 6 Mo. 177, wherein it was ruled that when a contest about a will was instituted in the circuit court, the jurisdiction of such court was not original, but derivative, and the result of the suit thus brought was to transfer the subject-matter from the probate court to the circuit court for adjudication in the latter, as if on appeal. To the same point see Benoist v. Murrin, 48 Mo. 48; Tapley v. McPike, 50 Mo. 589; Hughes v. Burriss, 85 Mo. 660. This being the case, the probate court indubitably lost jurisdiction over the cause and therefore had, at the time it assumed to act, no power to revoke the letters granted to the provisional administrator.

But it had no jurisdiction to do this for the equally cogent reason that, the jurisdiction of the circuit court so far as touched the validity of the will, being not original, but derivative, its attitude toward the probate court was that of an appellate court, and consequently the result of the will contest in the circuit court could not reach the probate court, except through the certificate of the former, to the latter court. No such certificate appears in the record. The fact that a transcript of what had been done in the circuit court was filed in the probate court, does not help the matter; the result should have been officially certified to the probate court. This view is also taken in Robinson's Estate, 3 Weekly Notes on Cases, 28; Schouler's Extrs. & Admrs. (2 Ed.), sec. 150.

3. The third question aforesaid, remains to be answered: What effect upon the jurisdiction of the probate court did the appeal have which was taken from the circuit court to this court?

In order to fully understand the subject-matter involved in this question, it is well enough for a moment, to become statutorily reminiscent: Section 10 of the statutes of 1825, p. 792, which corresponds with section 8888, *supra*, differs however, from that section in this, that after the word "final," occurred the words, "as to the facts." These words were eliminated at or before the revision of 1835. [See R. S. 1835, p. 619, sec. 17.] But, under the impression that section 10 aforesaid was still the same, it was declared in Dickey v. Malechi, *supra*, a case decided in 1839 concerning matters occurring in 1836, that this court in actions in such cases, could not "inquire into the sufficiency of the evidence to sustain the verdict of the jury" though they might inquire into the admission of "illegal testimony."

Since then, however, this court has made the same ruling as to the verdict of a jury in will contests as that in ordinary trials, to-wit, that such a trial is an action at law, and that this court would not reverse the judgment because the jury found

against the weight of the evidence. [Young v. Ridenbaugh, 67 Mo. 574.] And in Appleby v. Brock, 76 Mo. 314, a similar ruling was made, and also it was ruled in that case that this court would examine the record to see if there is any testimony to support the finding. To like effect is McFadin v. Catron, 138 Mo. loc. cit. 227.

The amendment of the statute of 1825 in the particular mentioned, as well as the rulings just quoted, have thus placed a will contest on the same plane as the trial of any other civil action, for we have ruled in many cases of ordinary trials that while we will not weigh the evidence in law cases, yet that we will interfere when there is no evidence whereon to base the verdict, although no instructions are asked. [Hartt v. Leavenworth, 11 Mo. 629; Robbins v. Phillips, 68 Mo. 100; Pipkin v. Allen, 24 Mo. 520; Heyneman v. Garneau, 33 Mo. 565; Morris v. Barnes, 35 Mo. 412; McEvoy to use v. Lane, 9 Mo. 47; Wilson v. Albert, 89 Mo. loc. cit. 544; Baker v. Stonebraker, 36 Mo. 338; Whitsett v. Ransom, 79 Mo. 258.]

Besides, the statute in relation to will contests is *in pari materia* with the statute governing ordinary trials in the circuit courts and ordinary appeals in that court, are likewise *in pari materia* with appeals in will contest cases. These statutes form one system and are to be construed together as one act, and made to harmonize as far as possible. [Sutherland Stat. Const., secs. 283, 288.] "A statute must be construed with reference to the whole system of which it forms a part. And statutes upon cognate subjects may be referred to, though not strictly *in pari materia*. There being a general statute regulating the execution of wills, which did not require subscribing witnesses, a new statute was passed providing for the testamentary disposition of the property of married women; it required that such a will should be executed in the presence of two witnesses. The two acts were construed together. A married woman's will had to be executed according to the

general law except in the particular regulated by the later act in respect to witnesses......Though a new statute prescribing the steps for taking an appeal is general and makes no exceptions, it will be construed with any existing law covering the same subject and containing an exception, for obvious reasons, in favor of parties who are such in a representative capacity......A statute authorizing the revival of actions by or against the representatives or successor in interest of the party deceased is *in pari materia* with other statutes providing for the appointment of executors and administrators, and also those pointing out how foreign representatives may acquire the right to prosecute actions. A statute relating to homestead and exemptions for a family of minor children was held *in pari materia* with laws allowing dower to the widow and minor children. A statute in relation to attachments against steamboats and other water craft is *in pari materia* with the general attachment law, and they should be construed together." [Ib., sec. 284.]

The general provision allowing appeals, allows them to be with or without bond; the statute under the head of wills mentions no bond to be given, and very properly so; the proceeding in the circuit court is wholly a proceeding *in rem*; the result of which is to determine the status of the paper writing offered in evidence, whether it be the will of the testator or not. [Benoist v. Murrin, *supra*; Harris v. Hays, 53 Mo. 90; 1 Woerner Am. L. Admin. (2 Ed.), star p. 500; Brown on Jurisdiction, sec. 64; McMahon v. McMahon, 100 Mo. 97.]

This being the sole issue joined in the circuit court it is extremely difficult to see, if a bond were required on appeal, how it could be framed and what would be its conditions. If the appeal be taken by the administrator *pendente lite*, a bond given by him certainly could not relate to the estate, because that is not involved in controversy in the circuit court; and if given to perform the judgment of this court, that would be

wholly unnecessary as being already covered by the bond previously given in the probate court. And upon an issue *devisavit vel non,* certainly there would be nothing to restore to the adverse party in the event of the appellant being unsuccessful in this court. The sole reason for giving a supersedeas bond is therefore lacking and doubtless, therefore, the statute in relation to such contests does not require a bond to be given. For these reasons we hold that no occasion existed to give bond in the circuit court and that the appeal transferred the cause to this court, so far as concerns the validity of the contested will.

Different provisions exist in the several states of this Union in relation to the forum of the contest over a will. In New Jersey and some other states, the probate, in common form, in the probate court, may be contested in solemn form in the same tribunal; while in Pennsylvania, and other jurisdictions the *ex parte,* or common form, probate may be contested by action in a court of law. [1 Woerner Am. Law Admin. (2 Ed.), 468, 469, 470.] In such cases in the State of Pennsylvania, the register issues a precept to the common pleas court, where the validity of the will is tried on a feigned issue. [Cauffman v. Long, 82 Pa. St. 72.] This case arose in that State: a will was offered for probate, by the executors; thereupon a caveat was filed and a request for an issue by a nephew of the testator. Letters *pendente lite* were then granted to the Fidelity Company and on the issue being tried in the common pleas, it was found in favor of plaintiffs, the executors. Whereupon the contestor brought error but gave no bail in error. Upon this the plaintiffs appeared before the orphan's court and moved it for a revocation of the letters *pendente,* and for grant of letters testamentary to them; but that court declined to revoke the letters, holding that the contestor having brought error to the Supreme Court, this prevented the orphans' court from taking any further cognizance of the matter until the final disposition of the writ of

error; and this, too, although the contesting plaintiffs in error had given no recognizance as required by act of assembly. [Robinson's Estate, 3 Weekly Notes on Cases, 28.]

In another application of a similar nature made in the same State, it was ruled that "the writ of error being still undisposed of," constituted an "insuperable obstacle" to the petitioners obtaining an order revoking letters *pendente*; and that such an order "if granted, would be in effect to decide the controversy between the parties in advance of a hearing by the Supreme Court." [Estate of Robinson, 34 Leg. Int. 159.]

In England it was ruled that an appeal taken after a verdict against the will, operated as an extension of the suit. [Taylor v. Taylor, 6 Probate Division, 29.] And in Macklin v. Allenberg it is said that an appeal is a continuation of the suit.

In New Jersey, the orphans' court because of a contest over a will appointed a temporary administrator, and afterwards admitted the will to probate, and the executors qualified accordingly. From this decree appeal was taken to the prerogative court. Upon this a petition was presented to the ordinary, asking that the administrator *pendente lite* appointed by the orphans' court might continue to act as such. And on the coming in of this petition, it was insisted that the term of office of the provisional administrator expired when the executors qualified; but the ordinary ruled otherwise, holding that the effect of the appeal was to suspend the operation of the decree appealed from, and that therefore, the executors had no power to act; and that the exercise of their functions was wholly suspended until the appeal should have been determined, and that though the functions of administrator *pendente lite* were suspended while the decree stood unappealed from, yet the appeal revived his powers, and further that the effect of the appeal was to continue the appointee of the orphans' court in office, and continue his functions

accordingly until the determination of the appeal.   [Brown v. Ryder, 42 N. J. Eq. 356.]   There was no hint or intimation in the case just cited, that any supersedeas bond had been given, or that any was necessary.   See, also, 2 Woerner, Am. L. Admin., 1203.

So, also, in Gresham v. Pyron, 17 Ga. 263, a ruling similar to the one just cited, was made.   In that case Pyron claiming to be a creditor of Stroman, deceased, obtained temporary letters of administration on his estate.   Pyron and Mitchell (the latter also a creditor) both advertised for permanent letters.   On the hearing, the ordinary granted the letters to Mitchell, and revoked the temporary letters to Pyron, as having expired by their own limitation; Pyron making no objection thereto within four days.   From the grant of permanent letters to Mitchell, Pyron appealed.   The constitution of Georgia, creating the office of ordinary, empowers that officer to "grant temporary letters of administration, 'to hold until permanent letters are granted."   (The italics are those of the court).   And upon this state of facts and law, the court observed:   "When, therefore, a temporary administrator is appointed, he may retain his office until the appeal from grant of permanent letters, is finally tried and determined, and these letters are granted.   In this case, Lewis Pyron, the temporary administrator, might have continued (in our opinion) to exercise his authority until the appeal was disposed of, if he had not acquiesced in the revocation of his temporary letters."

In answer, then, to the third inquiry, we hold that in consequence of the result of the will contest not having been officially certified down from the circuit court to the probate court, it was impossible for the latter to acquire any jurisdiction over the matter appealed from, to-wit, the validity of the will, and that even had the result been properly certified, still the probate court could not have acquired jurisdiction, by reason of the fact that the appeal taken from the circuit

court carried the matter appealed from to this court; and the appeal itself, from the very nature and necessity of the case, carried its own supersedeas along with it. And answering further, we hold that so long as the appeal lasts, so long will the time last during which the contest goes on, and during which, according to the plain words of the statute, the probate court could not revoke the appointment of relator, or what is tantamount thereto, reinstate the executrix.

4. Having proceeded thus far, we come down to the question of the remedy employed in this case: is *certiorari* the proper remedy? There is no doubt but what an appeal would lie from the order of the probate court reinstating the executrix in her former position. [R. S. 1899, sec. 278.] And it has been broadly stated that *certiorari* can not issue where remedy exists by either appeal or writ of error. [State ex rel. Mo. & Kansas Coal R. R. Co. v. Shelton, 154 Mo. 670.] In State ex rel. Garth v. Switzler, 143 Mo. 287, however, where an appeal might have been had from the order of the probate court, *certiorari* was awarded and the cause heard and disposed of in this court.

But the statement that *certiorari* will not issue where either appeal or error goes, though frequently met with in text writers, and in some reports, is neither strictly true nor accurate; there are marked exceptions. Thus where the exigencies of the case are such that the ordinary methods of appeal or error may not prove adequate either in point of promptness or completeness so that a partial or total failure of justice may result, then *certiorari* may issue. [Harris, *Certiorari*, sec. 54.] The rule that appeal or writ of error existing, bars *certiorari*, is subject to the qualification that such other means of redress, in order to form a bar, should be adequate to meet the necessities of the case. Thus the right of appeal, while generally held an adequate means of correcting mere errors committed in the exercise of jurisdiction, may prove inadequate to redress or prevent a wrong done in the absence or excess of

jurisdiction. [2 Spelling Extr. Relf., secs. 1918, 1963; Railroad v. Brannum, 11 S. Rep. (Ala.) 468; Vaughan v. Ashland, 37 N. W. Rep. (Wis.) 809; King v. Inhabit., 4 Maule & S. 378.]

In this regard, *certiorari* accomplishes in effect the same functions as does a court of equity where it interposes because the remedy at law is neither adequate, certain nor complete. By it if the inferior court is guilty of proceeding in the absence or excess or usurpation of jurisdiction, then that court may be kept within proper bounds. [State ex rel. v. Dobson, 135 Mo. loc. cit. 19 and cases cited.] And *certiorari* is a summary and more effective remedy for judicial excesses than writ of error or appeal. [2 Spelling Extr. Relf., sec. 1890.]

There are many authorities which hold that it is the inadequacy, and not the mere absence of all other legal remedies, and the danger of a failure of justice without it, that must usually determine the propriety of this writ. [LaGrange v. State Treas., 24 Mich. loc. cit. 477; Inhab. of Cushing v. Gay, 23 Me. 9; Hopkins v. Fogler, 60 Me. 266; Spofford v. Railroad, 66 Me. 26; Edgar v. Greer, 14 Iowa loc. cit. 212; C. P. Railroad v. Railroad, 47 Cal. 528; People ex rel. v. Hill, 53 N. Y. 547; Knapp v. Heller, 32 Wis. loc. cit. 468.]

An adequate remedy is a remedy which is equally beneficial, speedy and sufficient, not merely a remedy which at some time in the future will bring about a revival of the judgment of the lower court complained of in the *certiorari* proceeding, but a remedy which will promptly relieve the petitioner from the injurious effects of that judgment and the acts of the inferior court or tribunal. [People ex rel. v. Comr., 66 How. Pract. Rep. 293; Kirby v. Superior Court, 68 Cal. loc. cit. 605; Havemeyer v. Superior Court, 84 Cal. loc. cit. 398; People ex rel. v. Head, 25 Ill. 325; King v. Railroad, 2 B. & Ald. 646; People v. Mayor, 10 Wend. 395; People v. State Ins. Co., 19 Mich. loc. cit. 396; N. A. Dev.

Co. v. Orman, 71 Fed. Rep. 764; Railroad v. Brannum, 96 Ala. 461; State ex rel. v. Elkin, 130 Mo. 90; State ex rel. v. Rost, 49 La. Ann. 1454; State ex rel. v. Hirzel, 137 Mo. 447; State ex rel. v. Aloe, 152 Mo. 466, and many other authorities.]

And it has often been decided by numerous and respectable authorities that the discretionary stage has passed, when the writ has issued and the record of the inferior court in response thereto has been certified; that it is then the duty of the court to hear and determine the cause. [Ex parte Weston, 11 Mass. 417; Harris v. Barber, 129 U. S. loc. cit. 369; People v. Brooklyn Assessors, 39 N. Y. 81; People ex rel. v. Brooklyn Comrs., 103 N. Y. 370; Farmington Water Co. v. Comrs., 112 Mass. loc. cit. 212; Mayor of London v. Coxe, 2 L. R. H. L. loc. cit. 280; West River Bridge Co. v. Dix, 16 Vt. 446; Trainer v. Porter, 45 Mo. 336; 2 Spell. Extr. relief, sec. 1907; Inhabitants of Cushing v. Gay, 23 Me. 9.]

In this case the record being properly certified, the time for judicial discretion which we might have exercised in refusing the writ has not passed, and in the performance of our duty and in the exercise of our constitutional control over the inferior tribunals of this State, and finding from inspection of the record that the probate court acted beyond and outside its jurisdiction in making the order reinstating the executrix, while the appeal was still pending, we grant the motion to quash that order.

*Gantt, C. J.*, and *Burgess, JJ.*, concur, except as to so much of paragraph 4 as holds that by the granting of the writ "the discretionary stage" has passed. *Brace, J.*, concurs except as to the 4th paragraph, but agrees that *certiorari* lies in this case. *Robinson* and *Valliant, JJ.*, express their views in separate opinion. *Marshall, J.*, concurs *in toto*.

VALLIANT, J.—In so much of the foregoing opinion as holds that in such case, if the action of the probate court was

contrary to law, the proper remedy is afforded by the writ of *certiorari* I concur, but from the proposition that an appeal without bond from the final judgment of the circuit court establishing a will acts as a supersedeas of the judgment I dissent.

The whole proceeding relating to the probate of a will and contesting its validity is statutory, and we must therefore refer to the statute for a solution of every question relating to that subject that arises.   For this reason decisions of courts in other jurisdictions are of little service to us unless the statute to which they relate are like our own.   In Brown v. Ryder, 42 N. J. Eq. 356, to which we are referred, it is held that the will contest continues while the appeal is pending, and the office of the special administrator should be continued during that period.   But the appeal there referred to was that allowed by the statute of that State from the orphans' court to the circuit court where the trial was to be had *de novo*; and the English authorities cited in that decision related to an English statute which expressly provided that the appeal should supersede the judgment from which it was taken.

Under our system the probate court is the tribunal to which a will must in the first instance be presented, and if, as in the case at bar, that court admits it to probate and adjudges it to be the will it purports to be, that judgment is final unless and until a party interested institutes a suit in the circuit court to contest it.   But when such suit is instituted the effect is to vacate the action of the probate court, so far as relates to the establishing of the will, and to transfer the issue of *devisavit vel non* to the circuit court to be tried anew by a jury or by the court if jury is waived.   [Lamb v. Helm, 56 Mo. 420.]

Our statute law on this subject is contained in three sections, viz., 13, 8888, and 8889, Revised Statutes 1889.

Section 13 is:   "If the validity of a will be contested . . . . . . . letters of administration shall be granted during the

time of such contest........ to some other person who shall take charge of the property and administer the same according to law, under the direction of the court, and account for and pay and deliver all the money and property of the estate to the executor or regular administrator when qualified to act."

Section 8888 is: "If any person interested in the probate of any will shall appear within five years after the probate........ and, by petition to the circuit court of the county, contest the validity of the will ........ an issue shall be made up, whether the writing produced be the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court."

Section 8889 is: "The verdict of the jury or the finding and judgment of the court shall be final, saving to the court the right of granting a new trial, as in other cases, and to either party an appeal, in matters of law, to the Supreme Court or to the St. Louis or Kansas City Courts of Appeals."

Thus it will be seen that the administrator *pendente lite* was to be appointed in the language of the statute, "during the time of such contest," and the verdict and judgment in the circuit court were to "be final, saving to the court the right of granting a new trial, as in other cases, and to either party an appeal in matters of law."

If the lawmakers had understood a suit in the circuit court contesting a will to be governed by the code of civil procedure they would not have enacted section 8889 at all, because there would have been no necessity for it; in an ordinary civil suit the judgment on the verdict is final, the power in the court to grant a new trial and the right of appeal to the aggrieved party are provided for in the code. But because a suit of this kind was not an ordinary lawsuit and was not in all respects governed by the code of civil procedure that section was enacted, and whatever effect is to be given to the verdict and judgment in such case, and whatever rights as to new trial or appeal are afforded, are to be found in that

section alone.    The language of the section is not that new trials may be granted and appeals allowed as in other cases, but it is that new trials may be granted as in other cases, and an appeal allowed in matters of law, thus referring us to the code as to the granting of new trials, but limiting us to this section as to the right of appeal; but for the provision in that section there would have been no right of appeal in such case.    However, as was said in State ex rel. v. Woodson, 128 Mo. 497, the statute relating to appeals from the circuit court in ordinary civil suits and this statute conferring the right of appeal are *in pari materia*, and should be construed together.    In that case it was held that a judgment of the circuit court in favor of the contestant in a contested election case was not superseded by the appeal although the appeal bond required by the statute in such case had been given.    The appeal bond in that case was such as is prescribed in section 4744, Revised Statutes 1889, and covered costs only.    It was held that the legislature having given the right of appeal conditioned on the giving of such a bond, not only made the giving of such a bond essential to the right of appeal, but also that no other conditions to effect other ends were admissible, and since that was not the kind of bond which, under the Code, section 2249, relating to appeals in ordinary cases, could alone give to an appeal the character of a supersedeas, the appeal in that case did not have that character.    Under the statute governing the case at bar there is not even a bond for costs required and no bond in fact was given.    The bond required in section 2249, would be entirely inapplicable to a case either of contested election or contested will.    It is to cover "whatever debt, damages and costs, or damages and costs have been recovered by such judgment;" and would therefore be meaningless in a case of this kind.    In an ordinary money judgment where an appeal bond has not been given, the party in whose favor the judgment is, may, pending the appeal, have execution of his judgment.    But in the case of a contested will where the verdict

and judgment in the circuit court establish the will, the judgment does not require a *fieri facias* to execute it; it goes into force and executes itself, except as to the recovery of costs which is a mere incident.

Therefore upon the rendition of the judgment in this case the instrument in question was established as the last will and testament of Thomas G. Hall, deceased, requiring no further act either judicial or executive to give it effect as such. Then when the appeal was taken it was as if an appeal should be taken from an ordinary money judgment whereof the plaintiff had already had satisfaction by execution.

The language of section 13 above quoted, "letters of administration shall be granted during the time of such contest," can not be taken as intended to bear on the effect of an appeal, because it is not used in relation to that subject. It is a direction to the probate court to provide for the custody and preservation of the estate pending the contest and does not undertake to say when such contest shall be deemed to be ended.

In Mo. Pac. Ry. v. Atkison, 17 Mo. App. 484 cited with approval in State ex rel. v. Woodson, *supra*, PHILIPS, P. J., said: "Without reviewing the authorities, it is sufficient to say that the general rule in this respect, seems to be this: If the case taken by appeal is to be re-tried in the appellate court, *de novo*, as upon original process, and it is to settle the matter involved by its own judgment, to be enforced on its process, then the appeal—like that from a justice of the peace or the probate court—vacates the judgment *pro tem* of the inferior court. But if the appeal is in the nature of the ancient writ of error or *certiorari*, carrying up the case to the superior court for review only of the errors of the trial court, and the questions for adjudication are, shall the judgment of the lower court be affirmed or reversed, modified or remanded for further trial or special procedure, the appeal does not vacate or suspend the judgment of the inferior court, nor bar an action on the

judgment." Citing, Banks v. Wheeler, 28 Conn. 433; Rogers v. Hatch, 8 Nev. 39; Randler v. Randler, 67 Ind. 434 and Freeman on Judgt., sec. 328.

Not only does the statute allowing an appeal in a will contest case make no provision for a supersedeas, but if, as the majority opinion in this case holds, this statute is to be construed as a part of the general system of our statutory law on the subject of appeals, then it is governed by that general direction in section 2249, Revised Statutes 1889, that the appeal shall stay the execution only in the cases there specified, and this is not one of those cases.

The argument is made that if the provisional administrator should be now required to surrender the estate to the testatrix under the will and this court should reverse the judgment of the circuit court there would have to be a re-appointment of a temporary administrator and a re-surrender by the executrix. But that argument points out only one of the inconveniences of litigation and the courts will have to deal with it as with any other emergency when it arises. It is suggested also that this executrix is not required by the will to give bond and has given none. The probate court under section 12, Revised Statutes 1889, has the power to guard the estate from any danger that might threaten it on that account and even if it had not such power this court can not amend the law to cover the case.

The statute declares that the verdict and judgment in the circuit court shall be final, saving the power in the circuit court to grant a new trial, and the right to either party to an appeal in matters of law. It has made no provision for vacating or suspending the judgment pending the appeal, and, as we have seen, such an appeal alone does not have that effect. In my opinion the probate court correctly construed the law, and the motion to quash the record should be overruled. *Robinson, J.* concurs in these views.